DELBERT LUBBERS, Plaintiff-Appellee and Cross-Appellant, v. NORFOLK AND WESTERN RAILWAY COMPANY, Defendant-Appellant and Cross-Appellee.

Fourth District   No. 4—85—0656

Opinion filed September 25, 1986.—Rehearing denied October 24, 1986.

502

John E. Fick and Nicholas J. Neiers, both of Samuels, Miller, Schroeder, Jackson & Sly, of Decatur, for appellant.

Robert D. Owen, Linda M. Castleman, and Robert M. Owen, all of Owen, Roberts, Ltd., of Decatur, for appellee.

JUSTICE WEBBER delivered the opinion of the court:

Defendant appeals an order of the circuit court awarding plaintiff a new trial. Plaintiff cross-appeals arguing that the circuit court should have imposed severe sanctions on defendant for its discovery violations. The facts are set forth below in detail.

On August 12, 1977, plaintiff, Delbert Lubbers, filed a complaint in the circuit court of Macon County against defendant, Norfolk & Western Railway Company, seeking damages for injuries he suffered when a truck he was driving was struck by one of defendant's trains. Defendant filed a counterclaim against plaintiff seeking compensation for the damage to its train. The following facts were set forth at trial.

On July 20, 1977, plaintiff was hauling a truckload of grain to Peoria and was forced to take an unfamiliar route. Prior to beginning the trip he was warned by the farmer whose grain he was hauling that the road he would travel into Oakley made a "bad and danger-ous" crossing over a railroad track. The record does not reflect that plaintiff was told anything more specific about the track.

The Oakley crossing was known as "angle crossing" because of the sharp angle at which the road upon which plaintiff was driving crosses defendant's tracks. Both the road and the tracks generally run in an east-west direction. Testimony indicted that the sharp angle of the crossing made it difficult for persons traveling westward to see

down the tracks to the right. This difficulty was increased by the height of the corn alongside the road and by the bed of plaintiff's truck.

According to plaintiff's testimony, which was generally corroborated by the farmer who was following plaintiff to Peoria in his own truck, plaintiff was traveling northward toward the east-west road when he glimpsed a train moving at about 45 to 55 miles per hour in a southwesterly direction along a track somewhere beyond the east-west road. After turning onto the east-west road, plaintiff lost sight of the train and did not observe it cross the Oakley crossing. When he was about one-quarter mile from the Oakley crossing, plaintiff observed the crossing signals flashing. Proceeding westward toward the Oakley crossing, plaintiff observed that the crossing signals were continuing to flash but no train had come. He maneuvered his truck into a position perpendicular to the tracks and noticed, to the left, that the train he had observed earlier had passed the crossing. He looked to the right twice, but his vision was obstructed. He also slid over in his seat to get the best view possible. Plaintiff could see about one-quarter mile down the tracks to the right, but he neither saw nor heard anything to indicate that a train was approaching from that direction. As plaintiff was proceeding across the tracks, he heard a train whistle and was hit by a train coming from the right almost immediately afterwards. The train's engineer was killed, plaintiff and the train's brakeman suffered severe injuries, the truck was destroyed, and the train was damaged.

Evidence of the operation of the crossing signals on other occasions was admitted. A witness testified that he had crossed the Oakley crossing at 2:30 p.m. and 11:20 p.m. on the day before the accident and that on both occasions the crossing signals were flashing but no train came. The farmer whose grain plaintiff was hauling testified that in the early morning of the day of the accident he observed signal lights flashing at three different crossings of the same line a few miles east of the Oakley crossing but no train came. When called as an adverse witness, David Flannell, the signal maintainer in charge of inspecting the signals at the Oakley crossing, testified that inclement weather might so saturate the ballast around the rails as to close the electrical circuit in the device which triggers the signals and cause the lights to flash in the absence of a train. The day of the accident, however, was described as sunny. Evidence showing that the crossing signals had been malfunctioning on other days was excluded as was evidence showing that plaintiff had crossed other railroad crossings safely while the signals were flashing.

At the conclusion of the trial, the jury returned a verdict in favor of defendant. The jury answered yes to a special interrogatory asking if plaintiff's own negligence was a proximate cause of his injuries. Plaintiff was awarded nothing, and defendant was awarded $650. Judgment was entered on the verdict. That judgment was affirmed on appeal. *Lubbers v. Norfolk & Western Ry. Co.* (1980), 89 Ill. App. 3d 1205 (order under Supreme Court Rule 23) (*Lubbers I*).

Slightly more that two years after judgment was entered on the verdict, Richard Polley informed plaintiff's attorney that he had inspected the signal at the Oakley crossing shortly after the accident and discovered that the signal-inspection card in the crossing-signal control case contained no reports of inspections for six weeks prior to the accident. When he showed the card to his supervisor, the supervisor took the card away from him and warned him not to say anything about it to anyone if he wished to keep his job.

On September 15, 1982, plaintiff filed a petition pursuant to section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—1401) requesting that the judgment on the verdict be vacated and a new trial granted. Polley's affidavit was attached to the petition. As grounds for the petition, plaintiff alleged that defendant gave false answers to interrogatories requesting the names and addresses of all persons who observed the signals at the time of the accident and the most recent date the signals were checked. Plaintiff also alleged that the inspection record provided to him in response to a request for production had been falsified or altered. The circuit court allowed a motion to dismiss the petition and denied plaintiff's request for leave to file an amended petition.

On appeal this court reversed and remanded. (*Lubbers v. Norfolk & Western Ry. Co.* (1983), 118 Ill. App. 3d 705, 454 N.E.2d 1186 (*Lubbers IIA*).) We held that the allegations of defendant's fraudulent conduct tolled the requirement of section 2—1401 that the petition be filed within two years of the entry of the judgment and negated any implication that plaintiff had failed to exercise diligence in filing the petition. We held further that the allegations of defendant's fraudulent conduct and false testimony set forth grounds, if found to be true, for vacation of the judgment. One justice dissented, noting that even if plaintiff's allegations were true, the outcome would not have been different since the inspection data concealed by defendant would have no relevance to the bar presented by plaintiff's contributory negligence.

On further review, the Illinois Supreme Court affirmed our decision and remanded the cause to the circuit court with instructions to

grant plaintiff leave to amend his petition if he so desired. (*Lubbers v. Norfolk & Western Ry. Co.* (1984), 105 Ill. 2d 201, 473 N.E.2d 955 (*Lubbers IIB*).) The supreme court held that plaintiff's petition was not untimely. The supreme court stated, however, that it need not go as far as the appellate court did by holding that the evidence of defendant's misconduct would have been admissible on the issue of defendant's liability. The supreme court concluded that the outcome of the original trial may have been different had plaintiff added a count asserting that defendant committed wanton and wilful misconduct. The court stated that defendant's "failure to inspect the flashers at all for six weeks, in the face of actual knowledge of its duty to maintain them, could be viewed as such conscious or reckless disregard for consequences as to merit a wilful or wanton characterization [citations], to which [plaintiff's] contributory negligence, if any, would not be a defense." (105 Ill. 2d 201, 212-13, 473 N.E.2d 955, 960.) Two justices dissented, arguing that the allegations in the petition do not establish a basis for a new trial since plaintiff's own negligence was found to be the cause of the accident and not the malfunctioning of the signals or the improper maintenance of the signals, whether or not defendant's conduct in this regard is classified as negligence or wilful and wanton misconduct.

On remand plaintiff filed an amended petition to vacate the judgment containing allegations of fraudulent conduct on the part of defendant similar to those contained in the original petition. Plaintiff initiated discovery, and defendant filed a motion for a protective order. Defendant also filed a motion to dismiss the amended petition. Plaintiff took the evidence deposition of Polley on March 15, 1985. By written order dated April 4, 1985, defendant's motion to dismiss was granted in part and denied in part, and defendant's motion for a protective order was granted. Thereafter, defendant filed an answer to that portion of the amended petition not dismissed.

Plaintiff then filed additional counts, and defendant filed a motion to dismiss the additional counts. Both parties filed discovery requests, and defendant filed a motion for a protective order. Defendant's motions were denied. Thereafter, defendant filed answers to the additional counts.

Plaintiff then filed a second amended petition to vacate a judgment. In addition to the grounds alleged in the amended petition, plaintiff's second amended petition alleged that defendant gave incomplete and false answers to interrogatories and responses to requests for production concerning post-occurrence repairs to the crossing signals. Attached to the second amended petition was plaintiff's

interrogatory No. 60 and defendant's answer thereto which provided as follows:

"Have you repaired or replaced any signs, signals or other safety devices designed to prevent accidents at the crossing in question since July 20, 1977? If so, state:

a. A description of each repair that was made.

b. A description of each sign, signal or device that was replaced.

c. The date of each repair or replacement.

d. The name and address of the person who was in charge of each repair or replacement.

*ANSWER*:

(a) One hood as knocked off of north flasher in accident.

(b) New hood installed.

(c) Replaced 7/20/77."

The relevant request for production was also attached to the second amended petition and requested production of the following materials:

"4. Records and reports of repairs made to any audible warning signals, sight warning signals, physical barrier safety devices and roadbed and track at the crossing in question since July 1, 1975."

Defendant's notice of compliance, which was also attached to the second amended petition, provided as follows:

"A new hood was installed July 20, 1977, after the accident, on the crossing protection equipment. There are no reports indicating repairs to roadbed or to any locomotive warning signals subsequent to this accident."

The second amended petition alleged further that after the accident but prior to the time defendant filed the answers to the interrogatories and notice of compliance, "substantial portions of the electronic circuits had been replaced to eliminate the problem of the flashers flashing in the absence of an approaching train." Plaintiff alleged that had he been given complete and honest responses to the interrogatories and request for production, he would have included in his complaint a count alleging that defendant's conduct amounted to wilful and wanton misconduct and would have filed an action against the manufacturer of the crossing signal devices. Plaintiff alleged that these actions would have prevented the entry of a judgment against him. Alleging the same grounds as those alleged in the second amended petition, plaintiff filed a motion for discovery sanctions. Defendant's motion to dismiss the second amended petition was denied. Defendant filed an answer to the second amended petition.

A hearing on the amended petition and the second amended petition was held July 30, 1985, through August 22, 1985. Because of the outcome of the hearing and the arguments of the parties on appeal, the facts elicited concerning defendant's conduct with respect to Polley and the inspection of the signals need not be described. The following is a summary of the testimony concerning the repairs made to the signals.

Harry L. Clatterbuck, defendant's chief claim agent, testified that in poor weather the ballast at Oakley crossing would become wet, causing the signal flashers to operate continuously. Although he initially described the flashing as a malfunction, Clatterbuck later stated that the system is designed to operate in this manner. Clatterbuck stated that Hayward Dean Hammer prepared defendant's answer to interrogatory No. 60 and its responses to the requests for production. He stated that a substantial amount of time was involved in obtaining Hammer's answer and response. Clatterbuck stated, however, that a strike at that time slowed down defendant's operations.

Hammer, defendant's general supervisor of signals, testified that defendant had been experiencing a problem at the Oakley crossing in that the flashers would operate at the crossing in the absence of approaching trains when it rained or when lightning struck. Although Hammer was aware that changes had been made to the system to alleviate the problem, he was unfamiliar with the date of those changes. Hammer stated that the system has a built-in fail-safe device so that the flashers operate continuously if there is a problem in the system. Hammer stated that he prepared the answer to interrogatory No. 60 himself. He did not mention the change to the system in the answer to interrogatory No. 60 since he did not believe the question required inclusion of such information. He believed interrogatory No. 60 concerned only equipment and materials damaged in the accident of July 20, 1977, and changes to that equipment and materials or repairs made as a result of that accident. Hammer stated that he provided the information used to complete defendant's notice of compliance with plaintiff's requests for production. Hammer stated that he did not include information concerning the changes to the system made to alleviate problems caused by rain and lightning in the answer to request for production No. 4 for the same reason he omitted such information from the answer to interrogatory No. 60.

Herbert D. Wiggins, also a general supervisor of signals for defendant, testified that the crossing-signal system in place at the Oakley crossing on July 20, 1977, was a grade crossing predictor (GCP), Model 400, manufactured by the Marquardt Company. Wiggins

testified that, as a train would near the crossing, the electronic track circuit would drop out when the train entered a certain point. The GCP, by computer, would then ascertain the train's speed, predict its movement, and set the flashers so that they would operate 30 to 35 seconds before the train would reach the crossing. Wiggins testified that there was a problem in the system in that heavy rain storms would cause the ballast to become wet, which would in turn cause the electronic track circuits to drop out and the flashers to operate continuously. In the latter part of 1976 or early part of 1977 Wiggins discussed the problem and its possible solution with his supervisor. Although authorization for the change had been requested prior to the July 20, 1977, accident, no direct action was taken on the change until after the accident. In January 1978 the system was changed. The audio frequency overlay (AFO) equipment for the electronic track circuit was removed and replaced by direct current (DC) wraparounds. The DC wraparounds had not been used earlier due to manufacturer design and cost avoidance.

Plaintiff introduced several exhibits concerning the change to the system. In plaintiff's exhibit No. 65, a letter dated March 18, 1977, to J. E. Hartfield, defendant's assistant chief engineer, J. A. Tilton, Wiggins' supervisor, described the problem at Oakley crossing and listed its repair as a priority project. In plaintiff's exhibit No. 51, a letter dated September 13, 1977, to L. D. Durham, defendant's chief engineer, Hartfield proposed that the existing AFO electronic track circuits at Oakley crossing be replaced with DC wraparounds and stressed that "unnecessary operation of the crossing warning systems could have an adverse affect [sic] on safety operation." The authority for expenditure, which was approved in October 1977, was introduced as plaintiff's exhibit No. 57.

Plaintiff also introduced letters showing that defendant's claim agent and attorney had once considered filing a counterclaim against the manufacturer of the crossing signal system due to the problem caused by rain and lightning.

On August 26, 1985, the court entered a written judgment order. The court stated that plaintiff failed to prove the allegations of the petition concerning threats to employees and the use of false or fabricated evidence. However, the court stated that plaintiff successfully proved that defendant committed serious and gross violations of the rules of discovery "with respect to the central and most important issue to the [p]laintiff's case." However, the court stated that defendant's violations were not wilful. The court noted that "[p]laintiff's position at trial was that the flashers at the railroad crossing did not

operate properly because they activated when no trains were approaching." The most significant of defendant's violations of the rules of discovery came from its answer to interrogatory No. 60 and its response to request for production No. 4. The court stated that had defendant answered these discovery requests honestly and accurately, plaintiff could have filed an action against the manufacturer of the crossing signal but now that cause of action is barred by the statute of limitations. The court held that defendant's fraudulent concealment of the information concerning post-occurrence changes to the crossing system tolled the two-year statute of limitations for filing a petition under section 2—1401 of the Code of Civil Procedure. The court vacated the original judgment and awarded plaintiff a new trial. No sanctions were imposed on defendant for its violations of the rules of discovery other than the grant of a new trial and the denial of defendant's request that plaintiff be ordered to pay certain costs incurred by defendant. The court's order is discussed in greater detail later.

Plaintiff filed a post-trial motion requesting the court to impose additional sanctions on defendant for its violations of the rules of discovery. The court denied plaintiff's motion on September 20, 1985. Defendant filed a petition for amendments to the judgment by interlineation, and plaintiff filed a response. The judgment was amended on September 20, 1985.

On September 25, 1985, defendant filed a notice of appeal. Defendant requests that the court's order awarding plaintiff a new trial be reversed and plaintiff's second amended petition be denied.

Also on September 25, 1985, plaintiff filed a notice of cross-appeal. Plaintiff requests that severe sanctions be imposed on defendant for its violations of the rules of discovery. Plaintiff seeks an order entering judgment in favor of plaintiff on the question of liability and remanding the cause for a new trial on the question of damages only.

On appeal the parties raise four issues: (1) whether plaintiff's second amended petition to set aside the judgment was untimely; (2) whether the circuit court erred in permitting discovery prior to the hearing on plaintiff's second amended petition to set aside a judgment; (3) whether the circuit court erred in granting plaintiff's second amended petition to set aside a judgment and awarding plaintiff a new trial; and (4) whether the circuit court erred in failing to impose severe sanctions on defendant for its discovery violations.

■■ Defendant argues first that the second amended petition to set aside a judgment was untimely since it was filed more than two years after the date of the entry of the judgment and since no disability existed or fraudulent concealment occurred to toll the two-year

limitations period. Plaintiff argues that defendant fraudulently concealed a ground for obtaining post-judgment relief, thus tolling the limitations period.

Section 2—1401(c) of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1401(c)) provides:

> "The [petition to set aside a judgment] must be filed not later than 2 years after the entry of the order or judgment. Time during which the person seeking relief is under legal disability or duress or the ground for relief is fraudulently concealed shall be excluded in computing the period of 2 years."

General allegations of fraudulent concealment will not remove the bar of the limitations period appearing in section 2—1401(c); specific allegations of inculpatory facts must be raised. (See *Rosee v. Board of Trade* (1978), 57 Ill. App. 3d 228, 372 N.E.2d 1000.) The concealment of facts establishing a ground for relief under section 2—1401 must be something of an affirmative character, designed to prevent, and which does prevent, the discovery of the ground for relief. (*County Board of School Trustees v. An Association of Franciscan Fathers* (1977), 49 Ill. App. 3d 686, 364 N.E.2d 691, quoting *Nogle v. Nogle* (1964), 53 Ill. App. 2d 457, 202 N.E.2d 683.) The failure to comply with the obligation of full and truthful disclosure imposed on litigants by the rules of discovery constitutes fraudulent concealment for purposes of tolling the limitations period. *Ostendorf v. International Harvester Co.* (1982), 89 Ill. 2d 273, 433 N.E.2d 253.

■ The appellate court held in *Lubbers IIA*, and the supreme court agreed in *Lubbers IIB*, that plaintiff's original petition was timely filed. The previous decisions with respect to the timeliness of the petition are final and conclusive and have become the law of the case. Where, in a prior appeal, questions of law are presented and determined, such become the law of the case and are generally binding and will control in a subsequent appeal unless the facts presented in the subsequent proceedings are so substantially different as to require a different interpretation. (*Turner v. Commonwealth Edison Co.* (1978), 63 Ill. App. 693, 380 N.E.2d 477.) Because the original petition was found to be timely filed, the second amended petition must also be considered to be timely filed. The fact that the petition was amended to include additional allegations is immaterial since the final order of the supreme court provided for liberal amendments to be made to the original petition. Also, the fact that the allegations of fraudulent conduct alleged in the original petition were ultimately found to be untrue is immaterial since the petition need only allege specific facts showing fraudulent concealment to toll the limitations

period. (See *Rosee v. Board of Trade* (1978), 57 Ill. App. 3d 228, 372 N.E.2d 1000.) For these reasons the second amended petition was timely filed.

■ Defendant argues second that the circuit court erred in allowing plaintiff to engage in unlimited discovery prior to the hearing on the second amended petition to vacate a judgment. Defendant argues that public policy precludes allowing discovery at this stage. Defendant states that a person should not be permitted to file a petition to vacate a judgment and then be permitted to go on a "fishing expedition" to find grounds for relief. Plaintiff argues that because a proceeding under section 2—1401 is a "new action" (see *People v. Touhy* (1947), 397 Ill. 19, 72 N.E.2d 827), discovery should be permitted. In a supplemental brief plaintiff cites *People v. B. R. MacKay & Sons, Inc.* (1986), 141 Ill. App. 3d 137, 490 N.E.2d 74, in which the First District Appellate Court held that a party seeking to vacate a judgment has a right to conduct limited discovery in connection with a petition to vacate a judgment under section 2—1401. In response defendant states that *MacKay* is inapposite since the discovery which plaintiff conducted was not limited to the questions of fraud presented by the original petition.

The original action in *MacKay* commenced when the State filed a complaint for injunctive relief against respondent B. R. MacKay & Sons, Inc., and other defendants alleging violations of environmental protection laws for producing hazardous waste. Respondent filed a motion to dismiss for lack of personal jurisdiction alleging that it did not conduct business in Illinois. The motion was supported by the affidavit of Michael MacKay, respondent's president. Based on the statements contained in the affidavit, petitioner arrived at a settlement agreement with respondent and the other defendants. The agreement resulted in a dismissal order by the circuit court. Subsequently, the State acquired information indicating that MacKay's sworn statements were false. The State filed a petition to vacate the dismissal order under section 2—1401. The circuit court ruled that the State could seek discovery limited to materials relevant to the claimed fraud. When respondent failed to comply with the State's discovery requests, respondent was held in contempt. On appeal respondent argued that the circuit court could not compel discovery in a section 2—1401 proceeding. The court stated that the unusual facts present in the case, establishing a *prima facie* case of fraud, permitted limited discovery in relation to the section 2—1401 proceeding. After noting that no other Illinois case had directly addressed the question of posttrial discovery, the court stated:

"Respondent relies on *Taxman v. Health & Hospital Governing Com.* (1980), 83 Ill. App. 3d 499, 404 N.E.2d 419, which reasons that a 2—1401 proceeding is not designed to allow a litigant to do that which should have been done earlier, and is not meant to relieve a litigant of his own mistakes or negligence. In the present case, however, petitioner is using the 2—1401 proceeding and the discovery requests, not to discover information it forgot to request earlier, but to vacate a judgment in which it has made a *prima facie* showing was obtained by fraud.

In addition to the unique facts involving fraud here, we also note that the trial court carefully addressed respondent's specific objections. It granted respondent a protective order, and narrowly limited the scope of the discovery. We find, therefore, that the trial court properly ordered respondent to comply with the post-judgment discovery requests, and that it correctly found respondent to be in contempt of court for refusal to comply." *People v. B. R. MacKay & Sons, Inc.* (1986), 141 Ill. App. 3d 137, 141-42, 490 N.E.2d 74, 77.

We find *MacKay* persuasive. We note that the petition filed herein contained a *prima facie* showing of fraud and that the circuit court properly performed its role of overseeing discovery. Although plaintiff's allegations of fraud were ultimately found to be untrue, the petition herein nevertheless contained a *prima facie* showing of fraud. The court granted defendant's motion for a protective order until such time as it had an opportunity to file a response to the petition. Both parties were permitted to engage in discovery. On one occasion the court ruled that plaintiff's answers to defendant's interrogatories were unresponsive and ordered plaintiff to file more specific answers. Under the principles set forth in *MacKay*, the circuit court properly permitted discovery in relation to plaintiff's section 2—1401 petition.

■ Defendant argues further that the circuit court erred in permitting plaintiff to conduct discovery on matters other than the allegations of fraud contained in the original petition. However, our review of the record fails to show that defendant requested such a limitation. In accordance with principles of waiver, a party who does not seek to limit the scope of discovery cannot argue on appeal that discovery was too broad. Thus defendant's argument has been waived.

■ Defendant's third and final argument is that the circuit court erred in granting the second amended petition to vacate the judgment and in awarding plaintiff a new trial. Defendant's argument consists

of three contentions. Defendant contends first that it did not violate any rules of discovery. Defendant contends second that plaintiff has failed to show circumstances which would entitle him to relief under section 2—1401. Defendant contends third that plaintiff's misconduct should preclude him from seeking relief under section 2—1401.

Defendant contends first that the circuit court erred in finding that defendant violated the rules of discovery. Defendant states that interrogatory No. 60 sought information concerning "repair to or replacement of" any "signs, signals or other safety devices" and that request for production No. 4 sought records or reports of "repairs" to "warning signals" or "safety devices." Defendant states that no discovery violations occurred since the action taken by defendant was a "modification" to the "electronic triggering system." Thus defendant states that its answers were responsive.

Defendant's first contention is rejected. There was ample evidence produced to support the circuit court's decision that defendant's answers were unresponsive. Most notably, the letter to Durham from Hartfield states:

"To correct this situation, it is proposed to *replace* the existing AFO track circuit wraparounds with line controlled D. C. relay wraparounds.

\* \* \*

Since unnecessary operation of the *crossing warning systems* could have an *adverse [e]ffect on safety of operation*, this undesirable condition should be corrected promptly." (Emphasis added.)

The authority for expenditure prepared and approved by several of the Railway's employees contained similar language. Besides, Hammer did not state that he believed the change to the system need not be described or materials regarding that change need not be provided because the change was not a "repair" to the "signals" or "safety devices"; he stated that he did not include such information or materials because he thought that the interrogatories and requests for production concerned only repairs which were a result of the accident of July 20, 1977. For these reasons defendant's first contention is rejected.

■ Defendant's second, and strongest, contention is that plaintiff has failed to show circumstances which would entitle him to relief under section 2—1401. In *Ostendorf* the supreme court stated that in order "to be entitled to relief from judgment, the petitioner must prove (1) that if the ground for relief had been known at trial it would have prevented the entry of judgment against him, and (2) that failure to

discover and present the ground for relief was not the result of his own lack of diligence." (*Ostendorf v. International Harvester Co.* (1982), 89 Ill. 2d 273, 283, 433 N.E.2d 253, 257.) Whether a petition to vacate a judgment should be granted or denied is addressed to the discretion of the trial court and depends upon the facts and equities presented. (*Davis v. Chicago Transit Authority* (1980), 82 Ill. App. 3d 987, 403 N.E.2d 615.) The court's ruling on the petition will be disturbed on review only when the discretion vested in the trial court has been abused. (82 Ill. App. 3d 987, 403 N.E.2d 615.) Defendant contends that plaintiff showed neither that the improperly withheld evidence would have been outcome determinative nor that the failure to discover this evidence was not a result of his own lack of diligence, and therefore the circuit court abused its discretion in granting the petition and awarding a new trial.

■ Defendant contends that had plaintiff been aware at the time of the trial of the post-occurrence changes to the crossing system, this information would not have affected the outcome of the original trial since such evidence would not have been admissible. Evidence of subsequent repairs or improvements is inadmissible to show defendant's negligence. (*Yamada v. Hilton Hotel Corp.* (1977), 60 Ill. App. 3d 101, 376 N.E.2d 227; E. Cleary & M. Graham, Illinois Evidence sec. 407.1 (4th ed. 1984).) Evidence of this kind may, however, be used for other purposes, such as proving ownership, feasibility of precautionary measures, or impeachment. (E. Cleary & M. Graham, Illinois Evidence sec. 407.1 (4th ed. 1984).) Plaintiff simply states that the evidence would have been admissible to show defendant's notice of the problem at Oakley crossing and the feasibility of making repairs to correct the problem; however, plaintiff fails to show how these matters relate to any of the issues involved in the case.

■ In any event, plaintiff has failed to show that if he had received knowledge of the grounds for relief alleged in the petition and ultimately found to be true, he could have prevented the entry of a judgment against him. Plaintiff states first that had he known of this information, he could have filed an action against the manufacturer of the crossing-signal system, but that such an action is now barred by the applicable statue of limitations. Although plaintiff's statement may be true, an action against the manufacturer would not have prevented the entry of a judgment against plaintiff in his action against defendant. Plaintiff states second that had he known of the information concerning post-occurrence changes at the time of the original trial, he would have added to the complaint a count charging defendant with wilful and wanton misconduct. In an action based on wanton

and wilful misconduct, the doctrine of contributory negligence has no application. (28 Ill. L. & Prac. *Negligence* sec. 132 (1957). See *Lubbers v. Norfolk & Western Ry. Co.* (1984), 105 Ill. 2d 201, 473 N.E.2d 955; *Spence v. Commonwealth Edison Co.* (1975), 34 Ill. App. 3d 1059, 340 N.E.2d 550 (noting that only contributory wilful and wanton misconduct is a defense to an action alleging the same).) Thus, plaintiff argues that such evidence would have prevented the entry of a judgment against him. However, defendant's failure to change the crossing-signal system earlier even though it had the ability to do so may not have been such conscious or reckless disregard for consequences as to merit a wilful or wanton characterization. (See *Lubbers v. Norfolk & Western Ry. Co.* (1984), 105 Ill. 2d 201, 473 N.E.2d 955.) More importantly, there is simply no causal connection between defendant's alleged wilful and wanton misconduct and the accident of July 20, 1977. A similar problem arose in *Lubbers I.* In *Lubbers I* the court stated:

> "The trial court admitted evidence that the lights at the crossing had been flashing when trains were not coming on the day in question and on the day prior thereto. It excluded certain evidence that this had been happening on other days. As there was no evidence to show that plaintiff had ever been advised that the lights were likely to flash here when trains were not coming, it is difficult to see how this evidence, cumulative to that admitted, bore upon plaintiff's exercise of care. Whether he had reason to believe that no train was coming depended upon his observation at the time." (*Lubbers v. Norfolk & Western Ry. Co.* (1980), 89 Ill. App. 3d 1205 (unpublished Rule 23 order.)

Similarly, because plaintiff had presented no evidence at the original trial showing that plaintiff was aware of previous occasions on which the lights malfunctioned, he could not argue that defendant's misconduct, whether negligent or wilful and wanton, contributed to the accident of July 20, 1977.

For the above-mentioned reasons, plaintiff failed to show that had he been aware of the evidence of the post-occurrence changes at the time of the original trial, this information would have prevented the entry of a judgment against him. Because of our decision on this point, we need not decide whether plaintiff's failure to discover and present the ground for relief was the result of his own lack of diligence.

Defendant's third contention is that plaintiff's own misconduct should preclude him from seeking relief under section 2—1401.

Defendant states that plaintiff presented false affidavits and testimony concerning the Polley incident and the inspection data. Defendant cites the equitable maxim that one who seeks equity must come with clean hands. Although we need not determine the validity of this contention due to our decision on the preceding contention, we note that no support can be found for the proposition that the "clean hands" doctrine applies to proceedings under section 2—1401. Additionally, we note that defendant's argument is misplaced since the fact that plaintiff's claim was ultimately found to be false does not necessarily imply that plaintiff acted in bad faith in filing the petition.

Before addressing plaintiff's argument for the cross-appeal, we must address the effect of the trial court's order stating that "the Court finds that granting a new trial and vacating all previous judgments and not ordering plaintiff to incur [certain costs] are sufficient sanctions for violation of the Rules of Discovery since the violation was not willful." The court concluded that these sanctions were the only sanctions to be imposed on defendant for its discovery violations. We believe that the court's order was ambiguous. The court's finding that plaintiff was entitled to relief under section 2—1401 and the granting of a new trial should not have been characterized as sanctions for defendant's discovery violations. Additionally, the denial of defendant's request for reimbursement for certain costs should not have been characterized as a sanction for defendant's discovery violations. However, even if the trial court's order were to be construed as imposing a sanction on defendant by granting a new trial, we believe that such a construction would be in error. Our reasoning is explained in our discussion of plaintiff's cross-appeal.

Plaintiff's argument for the cross-appeal is that the circuit court erred in not entering severe sanctions against defendant for its violations of the rules of discovery. He argues that defendant's actions in failing to provide complete and accurate answers to the interrogatories and requests for production contravene the purpose of discovery—to completely and adequately inform parties of relevant facts so that they may be adequately prepared for trial. Plaintiff states that had the discovery violations not occurred, he would have added a count to the complaint charging defendant with wilful and wanton misconduct and would have filed an action against the manufacturer of the crossing signal system. He states that an action against the manufacturer is now barred by the statute of limitations and that relevant evidence has now been lost due to the passage of time. He also argues that the court's finding that defendant's violations were not wilful is against the manifest weight of the evidence since several of

defendant's employees knew of the problem existing at the Oakley crossing and the plans to correct the problem. Plaintiff seeks an order entering judgment in favor of him and remanding the cause for a new trial on damages only, and in support of this request, plaintiff cites *Buehler v. Whalen* (1977), 70 Ill. 2d 51, 374 N.E.2d 460. In response defendant argues that the court's finding that the discovery violations were not wilful and the court's decision to not impose severe discovery sanctions do not amount to an abuse of discretion. Defendant cites *Barnes v. Black & Decker Manufacturing Co.* (1984), 135 Ill. App. 3d 700, 481 N.E.2d 1200, for the proposition that severe sanctions should not be imposed on a party who commits nondeliberate violations of the rules of discovery.

The imposition of sanctions for noncompliance with discovery rules and other pretrial procedures rests largely within the discretion of the trial court; the exercise of such discretion will not be disturbed by an appellate court unless it is an obvious abuse of discretion. (*Plost v. Louis A. Weiss Memorial Hospital* (1978), 62 Ill. App. 3d 253, 378 N.E.2d 1176.) When a violation of discovery rules or procedures has occurred, any sanctions or penalties imposed must be proportionate to the gravity of the violation. *Buehler v. Whalen* (1977), 70 Ill. 2d 51, 374 N.E.2d 460; *Barnes v. Black & Decker Manufacturing Co.* (1984), 135 Ill. App. 3d 700, 481 N.E.2d 1200.

In the instant case there is support in the record for the circuit court's conclusion that defendant's violation of the rules of discovery was nonwilful. Hammer testified that his failure to provide information concerning the post-occurrence changes to the crossing signal system was the result of a misunderstanding. Additionally, defendant provided facts showing that a strike at the railway at the time the discovery requests were being processed slowed down all operations at the railway. Although it is true that defendant's employees were aware of the problem at the Oakley crossing and its correction, plaintiff failed to show any bad faith on the part of defendant in not providing plaintiff with this information.

If the trial court's order were to be construed as imposing a sanction on defendant by granting a new trial, such a construction would be inconsistent with the trial court's finding that the discovery violations were nonwilful. While courts may secure compliance with discovery procedures by granting a new trial, they should do so only where the noncompliance is substantial and not in good faith. (*Drehle v. Fleming* (1970), 129 Ill. App. 2d 166, 263 N.E.2d 348, *aff'd* (1971), 49 Ill. 2d 293, 274 N.E.2d 53.) The trial court's finding that the violations were nonwilful implies that they were insignificant. Additionally,

since the evidence withheld was not relevant to plaintiff's case, defendant's discovery violations could not be termed "substantial." For these reasons, any order granting a new trial based upon defendant's discovery violations would be in error.

The trial court's award of a new trial to plaintiff based upon the section 2—1401 petition is in error. The trial court's finding that defendant's violations of the rules of discovery were nonwilful is correct. However, the trial court's finding in this regard is inconsistent with the court's imposition of sanctions. Therefore, the trial court's award of a new trial to plaintiff as a sanction is also in error. Plaintiff is not entitled to a new trial for any reason; the subject of the court's denial of costs to defendant was not argued and is therefore waived under Supreme Court Rule 341(e)(7) (103 Ill. 2d R. 341(e)(7)).

Reversed as to new trial; affirmed as to costs.

McCULLOUGH, P.J., and GREEN, J., concur.